2022 IL App (2d) 200319-U
No. 2-20-0319
Order filed May 31, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lee County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-0207 |
| MARIANO G. ARELLANO, | ) ) | Honorable Jacquelyn D. Ackert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant's constitutional challenge to venue provisions allowing trial for cannabis trafficking to occur in any county constituted a facial challenge as defendant claimed that the provisions' venue criteria were arbitrary. However, defendant's claim failed because he cited no authority for the constitutional standard he applied to the provisions. (2) Defendant's claim that the State's comments in closing argument violated his right against self-incrimination was not supported by any cohesive argument that the comments prejudiced him. Thus, we declined to reach the merits of his claim.

¶ 2    Defendant, Mariano G. Arellano, appeals from his convictions of cannabis trafficking (720 ILCS 550/5.1 (West 2012) (2500 grams or more of cannabis)) and conspiracy to commit cannabis trafficking (720 ILCS 5/8-2, 550/5.1 (West 2012)). He raises two claims of error. First, he

contends that his trial in Lee County violated the venue clauses of the sixth amendment of the United States Constitution (U.S. Const. Amend. VI) and article 1, section 8 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8). Specifically, he argues that section 1-6(r) of the Criminal Code of 2012 (Code) (720 ILCS 5/1-6(r) (West 2012)) and section 4(d) of the Statewide Grand Jury Act (Act) (725 ILCS 215/4(d) (West 2012)), both of which provide that "[a] person who commits the offense of cannabis trafficking or controlled substance trafficking may be tried in any county," are unconstitutional, at least as applied to him. We hold that defendant's claim amounts to a facial challenge to these two venue provisions and that he has not met the high burden of demonstrating that they are unconstitutional. Second, defendant contends that the State in closing arguments violated his rights against self-incrimination by drawing attention to his comments to police officers that he intended not to tell them anything. As defendant fails to offer a cohesive argument on this point, we reject it. We thus affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 9, 2013, defendant was charged by complaint in Lee County with three cannabis offenses: (1) cannabis trafficking; (2) unlawful possession of cannabis with intent to deliver more than 2000 grams of cannabis but not more than 5000 grams of cannabis (720 ILCS 550/5(f) (West 2012)); and (3) unlawful possession of cannabis (720 ILCS 550/4(f) (West 2012) (same)). These offenses all were alleged to have taken place in Lee County. On October 3, 2013, a Lee County grand jury indicted defendant on the same offenses.

¶ 5      On November 18, 2013, the statewide grand jury entered a four-count indictment against defendant. The first three counts were the same as the Lee County indictment except the offenses were alleged to have occurred in Lee and Whiteside Counties. The fourth count charged defendant with conspiracy to commit cannabis trafficking. This offense also was alleged to have occurred

in Lee and Whiteside Counties. Also on November 18, 2013, the court in Lee County entered an "Indictment Return and Order," noting that the statewide grand jury had returned a three-count indictment for offenses "alleged[ly] *** committed in the counties of Whiteside and Lee in Illinois." The court ordered that Lee County be designated as the county of venue.

¶ 6    On May 12, 2016, before any substantive proceedings took place, defendant moved to dismiss the charges based on improper venue. He asserted that, according to the materials the State provided in discovery, none of the relevant events occurred in Lee County. He relied on section 1-6(a) of the Code for the proposition that "[c]riminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law." 720 ILCS 5/1-6(a) (West 2012).

¶ 7    Defendant also moved to suppress certain evidence, including statements he made to Detective Doug Wade of the Illinois State Police's Blackhawk Area Task Force (Task Force). Defendant alleged as follows. On September 9, 2013, Wade and other officers executed a search warrant at defendant's residence. Upon entering the residence, Wade identified himself as a police officer and gave defendant *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)). Defendant immediately stated, " 'It all stops here.' " Defendant also said, " 'I know why you're here and I'm not talking.' " Wade continued to question defendant after he indicated his intention to remain silent.

¶ 8    The motion to dismiss and the motion to suppress were heard in different phases of the same hearing. During the suppression-motion phase, Wade testified that, on September 9, 2013, he and other officers executed a search warrant at defendant's home. When Wade entered the home, he heard defendant say that "he knew why we were here and that he wasn't talking." Defendant made this statement before Wade had a chance to read defendant his *Miranda* warnings.

Wade did not read defendant his *Miranda* warnings until Wade had been in the house for about 12 minutes. Defendant then executed a *Miranda* waiver, after which he said, " '[I]it all stops here.' " Wade testified that defendant did not invoke his right to remain silent while the officers were at his house.

¶ 9    During the venue-motion phase of the hearing, Wade testified on the State's cross-examination that the investigation of defendant started when the Task Force received a tip about suspicious cash deposits by defendant at a bank in Dixon, which is in Lee County. When defense counsel asked Wade on redirect examination whether he had verified the existence of the Lee County deposits, Wade said, "We did a follow-up interview at U.S. Bank, which is, I believe, part of Inspector Albert's report." On recross, Wade clarified that bank employees were interviewed and identified defendant as having made "suspicious cash deposits" at the bank.

¶ 10    Nicholas Albert testified that, in 2013 when he was a Dixon police detective, he received a tip about defendant's cash deposits. Albert did not subpoena the relevant bank records. However, when he interviewed tellers at the bank, they recognized defendant from a photograph and said that he had "deposited money into an account that was not his."

¶ 11    The court denied the motion to suppress statements, reasoning that the statements in question were made either before Wade had the chance to give *Miranda* warnings or after defendant waived his *Miranda* rights. The court also noted that defendant did not invoke his right to remain silent.

¶ 12    The court denied the motion to dismiss for lack of venue:

"[O]n the issue of the improper venue motion to dismiss, what I heard argument of statements [*sic*] is that there were transactions that occurred that bridged Whiteside County and Lee County, specifically involving Lee County on the issues of potential *** money

laundering, which is one of the things that the Defendant is charged with.[1]  I believe US Bank is the bank that we're involved with.  Based on the fact that some of the transactions occurred in Lee County, at least arguably, I'm going to deny the Defendant's motion to dismiss for improper venue."

¶ 13    On July 8, 2016, the statewide grand jury entered a six-count superseding indictment.  The new counts were possession of a controlled substance, 1 gram or more but less than 15 grams of cocaine, with intent to deliver (720 ILCS 570/401(c)(2) (West 2012)) and possession of a controlled substance with intent to deliver within 1000 feet of a school (720 ILCS 570/401(c)(2). 407(b)(1) (West 2012)).  The indictment alleged that both offenses occurred in Whiteside County only.

¶ 14    On August 26, 2019, the State announced its intent to proceed on the original indictment from the statewide grand jury and to make amendments to the language of those charges to conform them to the language used in the superseding indictment.

¶ 15    The matter proceeded to a jury trial.  In his opening statement, the prosecutor described how postal inspectors at O'Hare International Airport (O'Hare) intercepted a package mailed to an address in Whiteside County, wired it so that they would know when it was opened, and arranged for a postal inspector dressed as a mail carrier to deliver the package to the address. Defendant opened the door and accepted the package from the inspector.  Within a minute of accepting the package, defendant opened it, triggering the alert to law enforcement.  The

---

[1] No such charge appears in any of the charging instruments in the record.  At oral argument, the State represented that it had never filed such a charge and that the trial court was mistaken.

prosecutor noted that, when the officers arrived, defendant said that he did not intend to speak with the officers:

"The police hit the house, police Search Warrant, they knock the door open, who's in the house, [defendant].  The package is right there, it's been opened.  Right away he sees the police and what he says is: 'I know why you're here,' 'I'm not talking.'  Later, as police talk to him, they want more information about the package—who sent it—what he says is: 'It all stops here.'

*** 

As police execute their warrant, go through the house, pick up evidence, they make small talk with [defendant], who's polite but he's not giving away any information."

¶ 16    Postal inspector Kelly Gates was the first witness for the State.  On September 6, 2013, she was at O'Hare examining incoming packages for characteristics suggesting that they contained dangerous articles or contraband.  She noticed a heavy and heavily-taped Express Mail package addressed to "Phil Garcia" in Sterling, Illinois—which is in Whiteside County. The package stood out because it was (1) heavily taped, (2) marked with postage of $108, (3) not sent with a signature requirement, and (4) sent from California, one of the states that permitted the cultivation and sale of cannabis.  Further, she determined that the sender's and recipient's names did not match the known residents of the sending and receiving addresses.  Moreover, Gates found records of similar packages that had been sent to the same Sterling address.

¶ 17    Gates obtained a search warrant to open the package.  It held a Rubbermaid container, within which were a t-shirt and seven plastic-wrapped bundles of what appeared to be cannabis. After the substance field-tested positive for the presence of cannabis, Gates contacted Illinois law enforcement to arrange support for controlled delivery of the package.

¶ 18    Postal inspectors equipped the package with a beacon to alert law enforcement officers when the package was opened.  They also added fluorescent theft-detection powder.  Dressed as a mail carrier, Gates drove the package from her officer at O'Hare to Lee County, where she met with Wade.  She then took a postal vehicle to the Sterling address.  She went to the door; defendant answered and said he was expecting a package.  She asked if he had been tracking the package online, and he said yes.  (The interception of the package had delayed its delivery, and the postal inspectors had created a false tracking record showing that it had been lost.)  She asked defendant to sign for the package, which he did.  He signed as "Phil Garcia."  Within minutes after Gates left, the beacon signaled that the package was open.

¶ 19    Wade, testified that, on September 9, 2013, he and other law enforcement officers waited for the results of Gates's delivery of the package.  At about 12:20 p.m., the beacon alerted them that the package was open, so they went to the delivery address to execute a search warrant that had been issued in anticipation of the package's opening.  As Wade entered behind another officer, defendant, who was about 10 feet from the package, said, " 'I know why you're here and I'm not talking.' "  Wade gave defendant *Miranda* warnings "at some point" and then "engage[d] him in conversation."  Wade asked him if he had any more information about the package, and he said, " '[I]t all stops here.' "

¶ 20    The State later questioned Wade about details of what happened when the officers made their entry into the house:

> "Q. And do you recall wasn't, in fact, someone yelling ['get down'] as you entered this house?
>
> A. Yes, Inspector Albert.

Q. And[,] as he's yelling that[,] your testimony is that [defendant] is saying, 'I know why you're here'—

A. Yes.

Q.—'and I'm not talking'?

A. Yes.

* * *

Q. But he was polite with you?

A. Yes."

¶ 21 Gregory Popp testified that, in 2013, he was a supervisor within the postal service's narcotics unit. He was part of the team that entered defendant's house after receiving a signal that the package was opened. Using ultraviolet light, he detected on defendant's fingertips the fluorescent theft-detection powder that had been added to the package.

¶ 22 The State also called Todd Shaver, who, in 2013, was an Illinois State Police sergeant and the director of the Task Force. He testified as an expert on the indicia of drug trafficking.

¶ 23 Defendant presented no evidence.

¶ 24 In his closing argument, defendant contended that it was suspicious that the State presented testimony of his statements during the raid but that no recordings of his statements existed.

¶ 25 In rebuttal, the State conceded that there were no recordings of defendant's statements. However, the State asserted that the officers were credible in testifying that defendant made the statements. The State also suggested that defendant's statements were too remarkable to forget:

"And, by the way, how do you forget something like that? 'I'm not talking'—let's think about that for a minute. 'I'm not talking,' who says that? This is somebody who's thought it out, this is the situation I might be in. And what does that mean, 'I'm not

talking'? You heard what it might mean and you could kind of piece it together inferentially anyway. I'm not talking because I know the next question is going to be who delivered, who sent this. *** So he says, 'I'm not talking,' *** he's protecting his source. This is a guy who's committed to the life. That's *** hard core. Police are here, 'I'm not talking'; that's hard core."

The State repeated this argument later in rebuttal:

"But he's committed. 'I know why you're here,' 'I'm not talking.' And then he says—he says it kind of—he says the same thing again, 'it all stops here.' As Todd Shaver explained, we're going up a chain here, he is not going to let that happen. He throws up a wall; he's hard core, that's his job. He's thought about this before."

Defendant did not object to either of these arguments.

¶ 26    The jury found defendant guilty on all counts.

¶ 27    The court imposed concurrent sentences of 10 years' imprisonment for cannabis trafficking and 7 years' imprisonment for conspiracy to commit cannabis trafficking.

¶ 28    Defendant filed a "Motion for New Trial or Judgment of Acquittal," which he later amended. His amended motion asserted, among other things, that (1) the trial court erred in denying his motion to dismiss for improper venue and (2) he "was denied due process and a fair trial where the State repeatedly elicited evidence that the Defendant invoked his Fifth Amendment right to remain silent."

¶ 29    On the venue issue, the State responded that, under section 1-6(r) of the Code (720 ILCS 5/1-6(r) (West 2012)), a "person who commits the offense of cannabis trafficking or controlled substance trafficking may be tried in any county." Further, it noted that section 1-6(f) of the Code provides:

"If an offense is committed upon any railroad car, vehicle, watercraft or aircraft passing within this State, and it cannot readily be determined in which county the offense was committed, the offender may be tried in any county through which such railroad car, vehicle, watercraft or aircraft has passed." 720 ILCS 5/1-6(f) (West 2012).

Relying on section 1-6(f), the State argued thatvenue was proper in Lee County because (1) the aircraft that brought the cannabis over Illinois probably flew over Lee County, and (2) postal inspector Gates drove through Lee County *en route* to defendant's house. Alternatively, the State contended that defendant waived his *constitutional* objections by citing only a *statutory* basis for his objection. (At the hearing on the motion, the State asserted that the joinder of all the charges was proper in the county in which the trafficking charge should be tried.)

¶ 30     Responding to defendant's due-process assertion, the State contended that, because defendant did not invoke his right to remain silent before making the statements in question, it was proper for the State to comment on them.

¶ 31     After hearing argument, the court denied both motions without providing reasons. Defendant filed a timely notice of appeal.

¶ 32                                  II. ANALYSIS

¶ 33     On appeal, defendant asserts that his convictions are improper for two reasons. First, his trial in Lee County violated the venue clauses of the sixth amendment of the United States Constitution (U.S. Const., amend. VI) and article 1, section 8 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8). Second, the State violated his rights against self-incrimination by drawing attention to his statements that he would not talk to the police. We consider each claim in turn.

¶ 34                                  A. Venue

¶ 35    Defendant argues initially that the Illinois and United States constitutions' venue clauses must be interpreted to require that "some act constituting part of the offense of Cannabis Trafficking be performed in the county of trial." Because sections 1-6(r) of the Code and 4(d) of the Act provide that a defendant accused of cannabis trafficking or controlled substance trafficking may be tried in any county, defendant asserts that these provisions are inconsistent with the requirement that a defendant be tried only the county where some part of the offense was committed. Therefore, he claims that the provisions are unconstitutional, at least as applied to him.

¶ 36    The State, in response, argues (among other things) that, in *People v. Bochenek*, 2021 IL 125889, ¶ 19—decided shortly before defendant filed his opening brief—our supreme court explicitly rejected the view that venue is proper only in the county where some part of the offense was committed. In *Bochenek*, the court upheld the constitutionality of a venue provision (720 ILCS 5/1-6(t)(3) (West 2016)) allowing trial for identity theft to occur in the county where the victim resides. *Bochenek*, 2021 IL 125889, ¶ 9.

¶ 37    In reply, defendant narrows his argument. He concedes that special venue provisions such as the provision in *Bochenek* need not require the accused to have committed an act in the county of trial. However, he argues that the special venue provision in section 4(d) of the Act—a "person who commits the offense of cannabis trafficking *** may be tried in any county"—remains constitutionally infirm under the standard in *Bochenek* because it requires "no nexus between the offense conduct or harm, and the county in which the State seeks to prosecute." (Defendant does not address how *Bochenek* applies to the State's claim in the trial court that venue was proper under section 1-6(r) of the Code, which, as noted, is identical to section 4(d) of the Act.)

¶ 38    Defendant's argument is strikingly insufficient.  He has mounted what we will show is a *facial* constitutional challenge to sections 1-6(r) of the Code and 4(d) of the Act, without admitting that he is doing so.  More importantly, he cites no authority for the constitutional standard by which he would have us judge the "any county" cannabis trafficking provisions.

¶ 39    A challenge to the constitutionality of a statute is a facial challenge only if the challenge implies that "there is no set of circumstances under which the statute would be valid." *Bochenek*, 2021 IL 125889, ¶ 10.  At first blush, that formulation might seem to imply that the "any county" provisions are not subject to facial challenges, as sometimes a county of trial selected under an "any county" provision might be a proper venue for another reason.  However, as *Bochenek* shows, a challenge to a special venue provision is a facial challenge not when it asserts that the provision can never produce the correct result, but when it asserts that it is never proper to apply the provision to determine venue.

¶ 40    The *Bochenek* court treated the defendant's challenge to section 1-6(t)(3) of the Code— which allows trial for identity theft to occur in the county where the victim resides—as a facial challenge despite the possibility that the county of a victim's residence might be, for instance, the county in which the offender committed most of the acts.  The defendant's contention was not that application of section 1-6(t)(3) could *never* produce proper venue, but that the provision "conflict[ed] with the constitution because no aspect of the crime of identity theft is connected to the location of the victim's residence," and that "such a location is therefore *arbitrary* in relation to the offense." (Emphasis added.)  *Bochenek*, 2021 IL 125889, ¶ 15.  Defendant's claim here is, similarly, that the "any county" provisions of sections 1-6(r) of the Code and 4(d) of the Act are arbitrary in relation to the offense of cannabis trafficking.  Thus, his claim, like the claim in *Bochenek*, is a facial challenge.

¶ 41    Defendant requests that we "construe[ ]" the relevant provisions to conform to his theory of constitutional venue.  This makes his argument appear more modest than it is.  Although a court has "an obligation to construe [a challenged] statute in a manner which upholds its constitutionality, if such a construction is reasonably possible" (*In re Parentage of John M.*, 212 Ill. 2d 253, 266 (2004)), the construction that defendant suggests is not reasonably possible for the "any county" cannabis trafficking provisions: sections 1-6(r) of the Code and 4(d) of the Act are utterly unambiguous: "[a] person who commits the offense of cannabis trafficking *** may be tried in any county."  720 ILCS 5/1-6(r) (West 2012)); 725 ILCS 215/4(d) (West 2012).  We cannot construe this to mean that "a person who commits the offense of cannabis trafficking may be tried in any county *in which some act constituting part of the offense was performed*."  Such a limitation undoes the plain meaning the legislature gave these sections.  No rule of construction authorizes a reviewing court "to declare that the legislature did not mean what the plain language of the statute imports"; moreover, no court "may *** rewrite a statute to add provisions or limitations the legislature did not include."  *Illinois State Treasurer v. Illinois Workers' Compensation Commission*, 2015 IL 117418, ¶ 28.  Thus, despite defendant's suggestion that we may "construe[ ]" the "any county" provisions to include additional requirements, his challenge remains a facial challenge.

¶ 42    "A party raising a facial challenge to a statute faces a particularly heavy burden." *Bochenek*, 2021 IL 125889, ¶ 10. "Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation." *Bochenek*, 2021 IL 125889, ¶ 10.

¶ 43    The cases defendant cites do not come close to satisfying this heavy burden.  Indeed, defendant fails to cite any authority that addresses the constitutional minimum standards for proper

venue. Defendant cites *People v. Hagen*, 145 Ill. 2d 287, 301 (1991), for the proposition that, to determine where an offense occurred for purposes of venue, a court must determine where the acts which constitute the offense occurred. In so holding, the *Hagen* court was addressing a particular statutory venue requirement, not a constitutional standard. Thus, *Hagen* is inapposite regardless of the effect of *Bochenek*. Defendant's citations of *People v. Caballero*, 237 Ill. App. 3d 797, 803-04 (1992), and *People v. Barraza*, 253 Ill. App. 3d 850, 853-55 (1993), suffer from the same defect; both cases discuss only statutory venue requirements. These cases cannot support a claim that the venue statutes at issue here are unconstitutional.

¶ 44                                   B. Self-Incrimination

¶ 45     Defendant contends that the State's closing arguments violated his rights under the self-incrimination clause of the fifth amendment of the United States Constitution (U.S. Const., amend V) when the State commented on his assertions of his right to remain silent. He further suggests that the State made comments that implied that defendant bore some burden of proof. Defendant, however, has failed to affirmatively show any error in the State's closing arguments.

> "The standard of review applied to a prosecutor's closing argument is similar to the standard used in deciding whether a prosecutor committed plain error. [Citations.] A reviewing court will find reversible error only if the defendant demonstrates that the remarks were improper and that they were so prejudicial that real justice was denied or the verdict resulted from the error." *People v. Jackson*, 2020 IL 124112, ¶ 83.

¶ 46     "This court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research." (Internal quotation marks and citation omitted.) *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 170. Often, when we invoke this principle, the appellant has

wholly neglected an issue. However, it applies equally to less blatant failures that nevertheless would require us to provide the analysis necessary to decide the case.

¶ 47 Here, were we to address defendant's claim on its merits, we would have to decide— without aid from defendant—whether he suffered prejudice from the contested comments. This would require us to address how closely balanced the evidence was and what effect the State's comments would have had on that balance. We could provide such an analysis, but that would make us defendant's advocate, which is not our proper role. As cases such as *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002), state: a reviewing court should refrain from addressing unbriefed issues when doing so "would have the effect of transforming [the] court's role from that of jurist to advocate". The same principle applies when an appellant, despite briefing an issue, has failed to supply the necessary analysis. As *Rodriguez* pointed out, when a reviewing court makes an argument on an appellant's behalf, it must also guess how the appellee would have responded. Thus. the result is likely to be unjust. *Rodriguez*, 336 Ill. App. 3d at 14. Here, we avoid that pitfall by declining to address the merits.

¶ 48                                    III. CONCLUSION

¶ 49    For the reason stated, we affirm the judgment of the circuit court of Lee County.

¶ 50    Affirmed.